Number 25-1052. Council, Mr. Lamphere, if you're ready we can proceed. May it please the court. My name is Eric Lamphere on behalf of the individual officers in the City of Colorado Springs. I would like to reserve two minutes of my time if I may. The officers did not have to pass up a great opportunity to effect a public arrest of a volatile felon because that individual sought to evade arrest by escaping and retreating into a residence. That individual was accused of felony menacing his elderly neighbor and probable cause for that felony was established minutes before the pursuit. Chad Burnett not only fled apprehension, he also failed to comply with three lawful commands before he was tased. The officers attempted to bring calm to the situation and de-escalate. Mr. Burnett time and again escalated. The force used throughout the encounter was reasonable and proportionate. When Mr. Burnett stopped resisting, the officers monitored him, found signs of life, found a pulse multiple times, all while emergency medical was responding code three. For these reasons, the district court erred in denying qualified immunity to the individual officers and erred in denying the motion for summary judgment of the City of Colorado Springs. The officers' entry into Mr. Burnett's residence was supported by exigent circumstances and specifically the hot pursuit doctrine. Counsel, where did the crime occur, the felony menacing crime? The felony menacing crime occurred on the Shaw's residence, Your Honor. I will note, too, that the geographical location that the crime scene isn't necessarily just their property. Remember that they established a probable cause for felony menacing just minutes before the pursuit occurred. Mr. Burnett at that time was in his front yard, a public place, also a place, too, where he had discharged or, excuse me, let go of multiple knives, including potentially the knife that was used in that underlying crime. Isn't it significant to the warrantless entry issue that the crime didn't occur on his property, it occurred on the Shaw property? I don't think so, Your Honor, for a few reasons. First, I think the crime scene idea connotes not just a geographical location but also potentially areas where evidence may be found. I think point two is if we look at Santana itself, we see a circumstance where Ms. Santana was accused of selling drugs within her house. The individual that she sold drugs to then left with police officers. They drove away. That individual was arrested. The officers came back and saw Ms. Santana at the threshold of her house. She then proceeded to flee away from officers and back into the scene of crime. So just by that case, Santana, I would say that there doesn't have to necessarily be a strict reading of the scene of the crime for purposes of this case. I would say, too, that we have a very significant public exigency here. That is that we have an individual that committed a violent felony act and the officers had fresh probable cause within minutes of the pursuit. That is sufficient by itself to find that the doctrine should apply. Well, why was it exigent, hot pursuit when couldn't the officers have obtained a warrant to go in the house? Why couldn't they wait to get a warrant? In fact, they even talked about that, didn't they? They talked about it earlier when they only had probable cause for a misdemeanor criminal mischief. I think at the time that they established felony probable cause, it was a game changer. The officers even said that. And so at that point in time, the officers... Well, it was a game changer because they decided to go in and not get a warrant. It was a game changer because Mr. Burnett chose not to surrender when they ran after him and pursued him. He instead fled, slammed a door on him, and continued his flight inside the residence. I think, again, if you look at cases such as Cruz and Santana, it doesn't support Mr. Burnett's actions. I also worry, too, that the district court's order is setting a significantly dangerous precedent by rewarding a felon for recklessly and dangerously fleeing a very lawful arrest. No one challenges the fact that the officers had probable cause for felony menacing, and that that felony menacing probable cause was established within minutes of the pursuit. I'll note, too, that other exigencies on the ground supported their pursuit. Mr. Burnett had possession of weapons, knives, also had access to multiple knives. Additionally, he was acting wildly erratic with times where he was being very aggressive with individuals, which is consistent with the underlying crime. Recall that he held a knife over his head and threatened to kill his elderly neighbor simply because his neighbor refused to take his personal possessions as a matter of a gift. Okay, so tell me this. What crime is that? Felony menacing, Your Honor. Okay. Do you contend that there was another time where he engaged in felony menacing closer to the alleged hot pursuit? No, Your Honor, but I would say probable cause was only established when they re-interviewed the Shahs and determined exactly where this crime had occurred. Because it was on the Shah's property, they felt that he did not have any type of viable self-defense claim that he may have if the crime had occurred in the cul-de-sac. And I will note, too, that Mr. Burnett was well aware that he was going to be arrested and that the officers wanted to contact him. Recall that Sergeant Inazu and Officer Fleming at one point told Mr. Burnett that he would be ticketed. At another time, when he voluntarily appeared outside his front door, he told Sergeant Inazu, I'm not a criminal. Another occasion, Officer Inazu and Fleming attempted to have Mr. Burnett either open the door or come out of his residence 45 times. And so even right before the pursuit began, as officers walked up his driveway, Mr. Burnett was extremely sensitive to where the officers were and concerned that they were going to arrest him. And in fact, his flight proves this. I would say that this particular case then falls outside of cases like Itaki and Welsh. And I would say that, again, cases like Cruz and the Seminole case, Santana, actually support the officers' entry into Chad Burnett's residence. Let me ask you a question about the excessive force. So at least as far as the knee on the back or sitting on his back or whatever, I mean, the district court, we have a finding from the district court that that occurred. And I think in your briefing, you dispute that. But we're stuck with he wasn't resisting and there was a knee on his back, right? I think you are stuck with the court saying that the extent of the resistance is disputed. How about minimally? There's a dispute of fact over the amount of resistance and there was an officer with a knee on his back. I think those are things that we are stuck with. However, I do not think that this court is necessarily stuck with accepting all of those legal conclusions that the district court made. Again, I think this is an issue. What's the legal conclusion there? The legal conclusion was that he was not resisting or that the office or another example would have been that the officers were recklessly and deliberately, you know, cause this this use of force. I think those are legal conclusions that this court does not have to necessarily accept. It doesn't matter. I mean, for purposes of that that claim, it doesn't matter who caused it. I mean, the officer. OK, so they say they didn't. If he was only minimally resisting and he had his knee on the back, that's well established. You can't do that, isn't it? Well, I don't know if it's well established. I don't. It depends on when you're speaking of it, when he forces himself back inside after they try to get him up off when they're outside the front stoop. I would say at that point in time, he is resisting. I think the body worn camera footage shows that he is resisting. But nevertheless, the court does not go so far as to say, look, he was subdued, effectively subdued or non resisting or even compliant. How about none of those words are about this? There's there's at least some set of facts in this record where a finder of fact could determine that there wasn't substantial resistance. Call it not substantial or call it minimal. And that the officers had a knee on his back. At one point in time, I think I'm not sure that they have a knee on his back, but they certainly have force on. I think it's on his legs at that point. That might be what you're referring to. But nevertheless, at that point, this comes after a very protracted resistance by Mr. Burnett. And I think that is reasonable. Totally, totally get it. But it sounds like we're arguing about the facts. I'm trying not to argue about the facts. I will accept the district court's findings of facts here. I just think there is a little murky area as far as what he does with his facts versus what the district court did with legal conclusions. And again, I think if you look at Plumhoff and the courts, this court's treatment of qualified immunity and that separation of qualified immunity issues versus sufficiency of evidence issues. I think this court can follow a state of Val Verde, Medina v. Graham, and Plumhoff as well and take on a lot of these issues. Counsel, I'm not sure I'm understanding the argument about your disagreement with legal conclusions. Let me ask it this way. Do you agree with the district court's Graham analysis on the prone restraint excessive force claim? On the prone restraint excessive force? Because I didn't see much in your brief on the Graham factors. I think the court, we challenge, the court said that there was record evidence that there was pressure put on Mr. Burnett. We challenge that as clearly contradicted by the record. Beyond that, I tend to agree that the court did say, hey, look, there's disputed facts as it relates to prone restraint. But I think the court can reach other parts of that encounter with Mr. Burnett without having to question the sufficiency of the evidence. One other point of clarification. Is the argument you're making an argument that goes to the constitutional violation prong of qualified immunity or the clearly established prong? This particular question or answer response would go to the first prong, although in our briefing and here today, we are saying that you cannot accept the court's finding of facts and then apply clearly established law. And the officers are entitled to qualified immunity. I have limited time and I want to spend some time on the medical aid claim. And I just want to remind this court that these officers are not doctors. They're not nurses. They're not EMTs. They don't have the resources or training of those individuals. This is why this court in cases like Wilson v. Meeks and Cronington v. Teleclaw found that not in any and all circumstances do officers have a duty to perform medical aid. Here, Mr. Burnett's signs of medical distress were subtle at best. And officers monitored Mr. Burnett. They found a pulse multiple times. They found other signs of life, all while emergency medical was responding code three. In these circumstances, I think you could say that the officers potentially mistook facts. They potentially acted negligent, but they did not act deliberately indifferent. They did not ignore Mr. Burnett. Quite the opposite. They spent a lot of time trying to discern his presentation. And specifically, the district court did not grapple with the undisputed facts that Mr. Burnett was found to have a pulse multiple times over while they questioned whether he was breathing. And the only tool in the toolbox that the officers had were chest compressions. And so the officers should not have to be put in the middle of a medical question of whether it is wise to perform chest compressions when an individual has a pulse, which indicates the heart is working, but may have faint or no breathing. That's a difficult circumstance, and they're entitled to qualified immunity in those circumstances. And with that, I would like to reserve the remainder of my time. Thank you, counsel. Thank you. Mr. Burnett-Gomez, you may proceed. Good morning, and may it please the court. Felipe Bonnet-Gomez for the estate of Chad Burnett. The officers' own contemporaneous statements frame what happened in this case. The officers established a status quo with Mr. Burnett. They recognized there was no exigency and that they would need a warrant unless he fell prey to one of their tricks. When Mr. Burnett later stepped outside his front door, the officers chased him inside anyway. And when he stopped breathing after being tased, handcuffed, and held prone, the officers ultimately dismissed his condition as plain possum. The district court correctly found that a jury could resolve the many disputed facts in this case in the estate's favor, supporting several violations of clearly established law. I'll begin with the warrantless entry claim. In the absence of any exigency, the officers' warrantless entry claim was clearly a violation of the Fourth Amendment. The district court here correctly determined that a jury could find that on this record, there was no immediate or continuous pursuit of Mr. Burnett from the scene of the crime, and therefore no hot pursuit. The officers initially challenged this, these factual findings, but in their reply brief, they concede that the questions of immediate or continuous pursuit or the crime scene are, quote, the facts themselves, not legal questions. So what's left is the officer's position that any time an arrest is initiated in public, the officers are free under the hot pursuit doctrine to follow the individual inside the home without a warrant. But that's not the law. Welch and Otakni clearly established that hot pursuit requires more than simply spotting a suspect in public and chasing them inside. It requires some sort of nexus with the crime, and in particular, those cases held at hot pursuit requires two things, immediate or continuous pursuit of the suspect, and second, that that pursuit be from the scene of the crime. Now, in the facts here, the officers can't meet either requirement. First, there wasn't any immediate or continuous pursuit of Mr. Burnett. So let me ask you a question. So what, after they talked to the Shaws about the knife incident, what if they would have encountered Mr. Burnett on the sidewalk in front of his house and said, hey, we're going to place you under arrest. We have, you know, reason to believe you committed felony menacing by raising a knife at your neighbor. And then he took off for his door. The timing of the encounter would be important. Here, there was an hour and a half long period of starts and stops, engagements and disengagements. As the officer said, they moved on him. I totally get that. Go back to my hypo. I want to work up to that. So if he was just, if they caught him right out front and said, hey, we just talked to your neighbors. They said that you threatened them with a knife. We believe we have cause to arrest you for felony menacing. And he takes off. Can they chase him down into his house and tackle him? If they do so immediately and continuously. That's not what happened here. Now, the officers put a lot of weight on their subjective determination of probable cause. But as the district court held here, and that's on 1251 of the record, there was probable cause before the officers even arrived. And that wasn't really in dispute. Do you think one of the issues here is that he was basically just outside his own door? They coaxed him out and he was just outside his own door before they tried to grab him? Yes, Your Honor. That was something that was argued before the district court. We had argued that he is essentially on his property during this whole encounter. And looking at the interactions, including asking him out of his door 45 times, moving his property further from his door, that that amounted to an effort to lure him out of the house to effect an arrest. I mean, there's nothing inherently wrong with that, is there? That is not really a question here on appeal. We don't argue that at this point, since the district court did find, based on the Sosa case, that it wouldn't be clearly established that initiating an arrest on his curtilage would violate the Fourth Amendment. So we can see that here on appeal. So, yeah, they could have done that. And it does seem that they were trying to lure him out of his house. I mean, and they did. They did lure him out of his house. Yes. Okay. But I want to emphasize that the probable cause determination that counsel for the officers mentioned doesn't have any effect here. The Fourth Amendment standard is an objective one. The district court did find there was probable cause at the beginning of the encounter. Certainly once they spoke with the security guards and the neighbors. What they spent an hour and a half long doing was trying to determine exactly where it happened and spending time trying to lure Mr. Burnett out of his house. In that time, they had multiple opportunities to effect the arrest, and they themselves recognized. I mean, when could they have effected the arrest? There were multiple times when they encountered Mr. Burnett in front of his house in the same posture that they did when they ultimately chased him inside. So they recognized, you know, we have time, and that there was essentially a stalemate, not an emergency. And second, there was also never any pursuit from the scene of the crime. Again, the crime scene here was the Shaw's residence, which is not really in dispute. And by the time Mr. Burnett had arrived, he was already in his home. He never left his property during the entire encounter. So the officers never encountered him at his home or pursued him. Excuse me, never encountered him at the crime scene or pursued him from it. Do your excessive force claims depend at all on your warrantless entry claim? They do not, because the officer's argument is simply a challenge to the district court's factual determinations. However, the officer's reckless conduct would be a factor weighing in favor of the estate, you know, at trial. Given the officer's warrantless entry, that is certainly a reckless act. I mean, in a way, your claim, at least to some degree, you know, brings forward the idea that the officers created the need to use force themselves. Yes. As Your Honor said, they spent time trying to lure him out of his house and then ultimately charged him without warning and pursued him inside. A jury could consider that as part of the totality of the circumstances when evaluating the reasonableness of the force. On the excessive force claims, I wanted to ask you about the taser part. Yes. Of that claim. Do you have any, and this goes to the clearly established law part of that claim, what factually analogous Supreme Court or Tenth Circuit case holds that it's unconstitutional to tase a felony suspect who is not detained? The state can't identify a case with particularly those facts. I think our best case is Casey, which held that it's excessive to use a taser to control a suspect without having reason to believe that lesser force would result in compliance. Didn't the officers tell Mr. Burnett three times to get on the ground before he was tased? They did, but as the district court found out, that happened virtually immediately before the tasing such that he didn't have a reasonable opportunity to actually comply with those claims. Don't we view the question, though, from the reasonable officer's perspective? That is, when the officer gives the warnings three times, why wouldn't we put ourselves, or why wouldn't the court put itself in the shoes of the reasonable officer in evaluating this claim? That is the rubric under which it's evaluated, but given the district court's factual finding that it happened so close in time to the tasing, a reasonable officer would have recognized this isn't enough time. Well, is that what the court said? That a reasonable officer wouldn't have, or that a reasonable officer would recognize that there wasn't enough time to respond, or was the finding that Mr. Burnett didn't have a reasonable enough time to respond? What was the factual finding? I think the factual finding was that under the circumstances, Mr. Burnett did not have enough time to respond given the timing of the warnings and the tasing. I think given those facts, though, a reasonable officer would recognize he would need to be given a little bit more time to respond to the commands before resorting to the taser. And so I think Casey and Kavanaugh and Perea, they embody the principle that the taser should not be the first resort to control a suspect, and that there needs to be a basis for believing that lesser force wouldn't work, and the officers hadn't tried that yet. So this part of the case, at least, seems to be right in the heart of where the Fourth Amendment excessive force cases are always debated on qualified immunity. Everything's happening real fast. You have a report from the security guard that he thinks he's got a gun in there. He's been throwing knives out the window. There was a pocket knife that he grabbed off a table and that they saw, and he was going back inside. I mean, he's a big guy acting erratically. I mean, all those facts seem to counsel in favor of the idea that maybe they had to act more quickly here. With respect to the taser claim, yes, Your Honor, I recognize that's a closer question than the phone restraint or warrantless entry or even the medical aid claim. Could I ask you on the medical claim, why didn't the officers call for medical assistance and their repeated checking for a pulse show that they were not deliberately indifferent to the medical condition? Maybe they should have started compression sooner, but were they indifferent, given that they were at least trying to do something? Yes, Your Honor. I think what it comes down to is the lack of breathing and the officer's decision to wait after they recognized that he wasn't breathing anymore until he also no longer had a pulse. As the district court said, a layperson would know that— Was he also unconscious at that point? Yes. Yeah, they recognized—they announced he was unconscious. One of the factual disputes is the timing of his loss of breathing versus when the officers announced he was unconscious, but they do so at a certain point. And at that point, they continue to wait until there's no more pulse detected. As the district court found, it doesn't take a medical degree to recognize that the lack of breathing is a serious medical emergency that needs to be addressed. So the decision to postpone the chest compressions, which they ultimately did do, until the pulse was gone, I think can amount to deliberate indifference on these facts. I want to address one more thing, which is the counsel for the officers' contention that they do invoke the blatant contradiction standard for the district court's factual findings. I think that's not the case. It's mentioned only one time in their brief with respect to the medical issue. The medical claim. I see my time has expired. We respectfully ask this court to affirm the district court. Thank you, counsel. Rebuttal. Your Honors, with my brief time, I would like to note that there is no authority that an officer cannot arrest a felon where the officers have fresh probable cause and that individual appears in a public case. Again, I think there is a very significant policy consideration that this court needs to think about. I also want to note, too, that we have not conceded that the scene of the crime and whether there was a media and continuous pursuit are somehow factual determinations. This is a legal question, and if we look at Plumhoff, if we look at Walton v. Powell, these cases really speak to, and I would note that Walton is penned by now Justice Gorsuch, that really speak to this divide between what can be considered by this court and what is a challenge to the factual sufficiency of the record. I see that my time is up. I'd ask this court to reverse the district court. I appreciate this court's time. Thank you. Thank you, counsel. Thank you to you both. The case will be submitted, and counsel are excused.